| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>----------------------------------------------------------------------X<br>DOUGLAS ALFORD,<br><br>                      Plaintiff,<br><br>              - against -<br><br>THE CITY OF NEW YORK, POLICE OFFICER<br>DANIEL GONG, POLICE OFFICER CALEEF<br>MCCLEAN, and POLICE OFFICERS JOHN DOE 1-8,<br><br>                      Defendants.<br>----------------------------------------------------------------------X | **NOT FOR PUBLICATION**<br><br><br><br>**MEMORANDUM & ORDER**<br><br>No. 11-CV-0622 (ERK) (MDG) |

KORMAN, J.:

Plaintiff Douglas Alford filed his complaint against the City of New York and two New York City Police Department officers following two arrests, asserting claims under 42 U.S.C. § 1983 and state law.

## FACTUAL BACKGROUND

The relevant facts, as set forth in the amended complaint, are straightforward. On August 5, 2010, Officer Daniel Gong observed Douglas Alford selling music compact discs on the sidewalk in front of 210 Livingston Street in Brooklyn. (Am. Compl. ¶¶ 13-14.) When Officer Gong asked him for his vendor's license, Alford gave him two documents: A New York State identification card and a July 14, 2010 "Decision and Order" by a New York City administrative law judge, which stated that Alford was not required to have a general vendor's license. (Am. Compl. ¶ 14.)

Officer Gong made several phone calls over a twenty-minute period and discovered that there was an outstanding bench warrant for Alford's arrest, which was issued in 1977 after Alford had failed to appear in a criminal action against him. (Am. Compl. ¶¶ 14.) Officer Gong

1

arrested and handcuffed Alford.  (Am. Compl. ¶ 16).  Alford immediately complained to Officer Gong that his handcuffs were too tight but was ignored until he arrived at the police station, where another officer loosened them.  (Am. Compl. ¶¶ 18, 20.)  Alford suffered "pain . . . and numbness" as a result of the overly-restrictive cuffing, (Am. Compl. ¶ 17), and, though not mentioned in the amended complaint, the handcuffs left one of his wrists with a red line for about a week.  (Pl.'s Decl. Ex. 3 at 20.)  Once at the police station, Alford was searched, arraigned, and released on his own recognizance.  (Am. Compl. ¶¶ 22-26.)

The second arrest at issue occurred on August 13, 2010, only eight days after the first. (Am. Compl. ¶ 35.)  Officer Caleef McClean[1] observed Alford selling music compact discs on the sidewalk in front of 789 Broadway in Brooklyn.  (Am. Compl. ¶¶ 35-36.)  Officer McClean asked to see Alford's vendor's license, and, as before, Alford gave Officer McClean his New York State Identification Card and the 2010 Decision and Order by the administrative law judge. (Am. Compl. ¶ 36.)  While speaking to Alford, Officer McClean, trained in the NYPD's Peddler Unit, identified the compact discs as counterfeit.  Officer McClean based his determination on the poor quality of the descriptive slips at the front of the discs' cases.  (DE 28 at 5.)  Officer McClean arrested Alford and charged him with "Failure to Disclose the Origin of Recording" and as an "Unlicensed General Vendor."  (Am. Compl. ¶¶ 37, 47.)  Alford was prosecuted for these two charges in a bench trial on November 16, 2011.  (Am. Compl. ¶ 48.)  During that trial, the charges were reduced to a single count of Failure to Disclose the Origin of Recording under New York Penal Law § 275.35.  While Officer McClean testified at trial, the prosecution was unable to introduce the CDs that were seized from Alford because they had been accidentally

---

[1] Alford misspelled defendant McClean's name throughout his amended complaint; McClean is the correct spelling.

destroyed. (*See* Crim. Trial Tr. 2, Pl.'s Decl. Ex. 4.) After the prosecution rested, the trial judge granted Alford's motion for a trial order of dismissal.

## PROCEDURAL HISTORY

Alford's amended complaint sets forth seven causes of action against the City of New York and Officers Gong and McClean. First, a false arrest claim under 42 U.S.C. § 1983 against defendants Gong and McClean, brought on the grounds that there was no probable cause for either the August 5th or the August 13th arrests. (Am. Compl. ¶¶ 51-55.) Second, and relatedly, a state law false arrest claim pursuant to Article 1, Section 12 of the New York State Constitution against all defendants, brought on the grounds that there was no probable cause for either arrest. (Am. Compl. ¶¶ 79-83.) Third, an unlawful search claim under 42 U.S.C. § 1983 against defendants Gong and McClean, in which Alford asserts that the officers searched him without any individualized reasonable suspicion that he was concealing weapons or contraband. (Am. Compl. ¶¶ 56-60.) Fourth, a "denial of a constitutional right to a fair trial" claim under 42 U.S.C. § 1983 against defendants Gong and McClean, alleging that the officers forwarded falsified evidence to prosecutors and gave false testimony at Alford's trial. (Am. Compl. ¶¶ 61-66.)

The fifth cause of action is an excessive force claim under 42 U.S.C. § 1983 against defendant Gong only, on the grounds that he secured Alford's handcuffs too tightly in the August 5th arrest. (Am. Compl. ¶¶ 67-71.) Sixth, and relatedly, a state law claim for assault and battery against defendant Gong only, arising out of the same conduct. (Am. Compl. ¶¶ 72-78.) Finally, seventh, a municipal liability claim under 42 U.S.C. § 1983 against the City of New York, which alleges that the city has established a policy for its police officers to: (1) wrongfully arrest individuals on the pretext that they are/were involved in illegal acts; (2) manufacture evidence

against individuals allegedly involved in illegal acts; and (3) arrest innocent persons in order to meet productivity goals. (Am. Compl. ¶¶ 84-95.) Each of these arguments is addressed in turn.

## DISCUSSION

I.  *False Arrest and False Imprisonment Under 42 U.S.C. § 1983*

Alford alleges that he was arrested and imprisoned without probable cause. The Fourth Amendment's prohibition against unreasonable search and seizure requires that an arrest without a warrant be based on probable cause to believe that an offense is being or has been committed. *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983). Probable cause exists when the arresting officer has knowledge of or reasonably trustworthy information as to facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested. *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks omitted). The "existence of probable cause to arrest is a complete defense to an action for false arrest." *Weyant,* 101 F.3d at 852 (internal quotation marks and citation omitted).

Here, there was probable cause for both of Alford's arrests. On each occasion, he did not have a vendor's license or a Certificate of Authority. (Am. Compl. ¶¶ 14, 36.) Not having either document while selling goods on a New York City sidewalk is a crime: New York General Business Law § 34 provides that "any citizen may arrest any peddler who neglects or refuses to produce his license on demand," and New York Tax Law §§ 1134(a)(2) and 1817(d) makes it a misdemeanor for a vendor to not have a Certificate of Authority.

Alford alleges that at the time of each arrest, he handed to the arresting officer a Decision and Order, dated July 1, 2010, "wherein, in a prior action, a New York City Administration Law Judge assigned to the New York City Environmental Control Board, had determined that the

4

plaintiff, who had been similarly accused of selling CDs without a general vendor's license, was not required to have a general vendor's license on the basis that he was a 'First Amendment Vendor.'" (Am. Compl. ¶ 36.) If the only basis for the arrest was Alford's failure to have a General Vendor's License, this claim would warrant further discussion. *See* Defs.' Mem. Law 60, n.12. There was, however, probable cause to arrest Alford for failing to possess a Certificate of Authority. Indeed, even failure to *prominently display* a Certificate of Authority is enough to provide probable cause for an officer to believe a vendor does not possess one. *People v. Pao Fun et al.*, 840 NYS.2d 295, 297-98 (N.Y. Crim. Ct. 2007). This provided a sufficient basis for his arrest. *See Clarke v. City of New York*, No. 96cv5762, 1999 WL 608857, *5 (E.D.N.Y. Jul. 22, 1999). I note, parenthetically, that Judge Go ordered Alford to produce his Certificate of Authority on May 24, 2011, June 29, 2011, July 26, 2011, and January 8, 2012, and warned that if he did not produce it by January 24, 2012, he would be precluded from presenting it in this action. On March 20, 2012, when the Certificate of Authority had still not been submitted, Judge Go issued a Preclusion Order barring Alford from presenting the certificate in this action, noting that "if such a document were able to be produced, plaintiff would have produced it."

There was also additional probable cause specific to the August 5th arrest. On August 5th, Officer Gong detained Alford after discovering that there was an outstanding bench warrant for his arrest. (Am. Compl. ¶¶ 28-29.) There can be no action for false arrest when the arrest is made pursuant to a warrant. *Anderson v. United States*, No. 98-CV-4782 (ADS), 2001 U.S. Dist. Lexis 24467, at *33 (E.D.N.Y. Jul. 20, 2001) (citing *Collins v. Brown*, 514 N.Y.S.2d 538, 540 (N.Y. App. Div. 1987)).

5

II.      *Unlawful Search Under 42 U.S.C. § 1983*

Alford alleges that he was unlawfully searched as a result of the August 5th and August 13th arrests, in violation of his right to privacy under the Fourth Amendment. The Fourth Amendment, however, is only a guarantee against *unreasonable* searches and seizures, *see United States v. Sharpe*, 470 U.S. 675, 682 (1985), and searches incident to lawful arrests are valid. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Alford's argument therefore relies upon the validity of his underlying false arrest claims, and consequently fails because the arrests at issue were lawful.

III.     *Excessive Force Under 42 U.S.C. § 1983*

Alford alleges for the first time in his amended complaint that Officer Gong put his handcuffs on too tightly when he arrested him on August 5th, and in doing so violated his constitutional rights. His allegation of excessive force fails because the amount of force used must be more than *de minimis*. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Indeed, even the Eighth Amendment cases, on which Alford relies, hold that "[t]he extent of injury may [] provide some indication of the amount of force applied," *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010), and that an "inmate who complains of a 'push or a shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal quotation marks omitted)).

Moreover, "there is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468-69 (S.D.N.Y. 2008). *Kerman v. City of New*

6

*York*, 261 F.3d 229 (2d Cir. 2001), is not to the contrary. There, the Second Circuit held that allegations of "handcuff tightening, infliction of pain, verbal abuse, humiliation and unnecessary confinement to a restraint bag in a painful position . . . might well be objectively unreasonable and therefore excessive." *Id.* at 240.

This case is a far cry from *Kerman*. In his testimony in the Rule 50(h) hearing, Alford described the handcuffs as having been "kind of tight" and he did not seek medical attention afterward. Moreover, the amended complaint acknowledges that when Alford got to the 84th Precinct, which (according to Google Maps) is eight tenths of a mile away from where the arrest was made,[2] the handcuffs were loosened by other police officers. (Am. Compl. ¶ 20.) The amended complaint does not allege any injury beyond temporary discomfort during the few minutes that it took to drive to the 84th Precinct. The full extent of his alleged injury was a red line on his left wrist, which lasted for at least one week.

IV. *Denial of the Right to a Fair Trial/Malicious Prosecution Under 42 U.S.C. § 1983*

A cause of action for denial of the right to a fair trial and a cause of action for malicious prosecution are separate and distinct. The element that they have in common involves the creation of false evidence resulting in a denial of liberty. In a cause of action based on the denial of the right to a fair trial, the deprivation of liberty necessarily involves a conviction and a resulting sentence. *Zahrey v. Coffey*, 221 F.3d 342, 350 (2d Cir. 2000) (Judge Newman). If, as here, the defendant was acquitted or the trial was aborted before verdict, "it could be said either that the misconduct did not cause a deprivation of liberty or that no constitutional right was violated." *Id.* By contrast, an action for malicious prosecution may lie in a case such as this

---

[2] A judge may take judicial notice of the distance between two locations, particularly when they are within walking distance of the courthouse in which he sits. Richard T. Farrell, *Prince, Richardson on Evidence*, § 2-204, at 33 (11th ed. 1995).

7

where the trial was aborted before verdict by an order of dismissal after the prosecution rested, if the defendant suffered a post-arraignment deprivation of liberty based on fabricated testimony of a law enforcement officer that resulted in the filing of a criminal complaint. *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995).

Alford alleges that Officer McClean knowingly provided false evidence to the Kings County District Attorney's Office—specifically, the amended complaint alleges that, "Legal Assistant Alfred Rizzo of the Kings County District Attorney's office, alleged that he was informed, *inter alia*, '*by supporting deposition of POM Caleef R. McLean that . . . informant observed the defendant display and offer for sale multiple CDS on which there was no clear indication of the origin of the recordings.*'" (Am. Compl. ¶ 48 (emphasis in original).)

The only issue here is whether Alford can show "some [post-arraignment] deprivation of liberty consistent with the concept of 'seizure.'" *Singer*, 63 F.3d at 116. Alford alleges that he was simply given a desk appearance ticket and instructed to appear in court on a date certain. While a criminal complaint was filed, there was no allegation that he was arraigned on the complaint or that he was subject to any restrictions on his travel. Alford was forced to attend court on one occasion and face trial on two charges, one of which, being an "Unlicensed General Vendor," did not rely on the alleged fabricated evidence and alone would have forced Alford's attendance. "[T]he issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010). Because Alford has not alleged any deprivation of liberty under the Fourth Amendment, his claims for malicious prosecution must be dismissed.

V.   *Municipal Liability Under 42 U.S.C. § 1983*

Alford also sues the City of New York under 42 U.S.C. § 1983, alleging that the city has established an unconstitutional policy for its police officers to arrest innocent people and fabricate evidence against them.  As discussed above, Alford's constitutional rights were not violated and thus there is no underlying constitutional violation for which the city might be held responsible.  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").

## CONCLUSION

Defendants' 12(b)(6) motion to dismiss the § 1983 causes of action is granted.  The pendent state law claims are dismissed without prejudice.

SO ORDERED.

Brooklyn, New York
August 29, 2012

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge

9